UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

SANDRA DIAZ,

                Plaintiff,

           v.                                            Case No.  13-C-1294

CAROLYN W. COLVIN,
Acting Commissioner,
Social Security Administration,

                Defendant.

---

## ORDER AFFIRMING THE DECISION OF THE COMMISSIONER AND DISMISSING CASE

      Plaintiff, Sandra Diaz, seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA).  Diaz first applied for SSI on October 10, 2006, alleging that she was disabled and unable to work since August 1, 2005.  (Tr. at 19).  An Administrative Law Judge (ALJ) denied her application on April 27, 2009, finding that Diaz retained the ability to continue past relevant employment as a housekeeper and mail clerk. (Tr. at 167-73).   The Appeals Council remanded the case after concluding that past relevant work could not form the basis of the denial and the ALJ had not properly considered the opinion of Dr. Michael Eis.  (Tr. at 176-78).  Again, the ALJ denied the application in 2010 (Tr. at 182-94), and the Appeals Council remanded the case one more time finding that the ALJ had not adequately explained why the additional limitations of Dr. Roland Manos were not adopted.  (Tr. at 201-02).  On January 16, 2013, a different ALJ held a hearing, at which point Diaz  testified and was  represented by counsel.  (Tr. at 127-61).  On April 11, 2013, the ALJ determined that Diaz was not disabled and denied her application because he found that Diaz is "capable of making a successful adjustment to other work that exists in significant numbers in the national economy."  (Tr. At 26-27).  Diaz

filed another appeal to the Appeals Council, and on September 14, 2013, the Appeals Council declined to review the case. (Tr. at 1). The Appeals Council's denial of review made the ALJ's decision the Commissioner's final decision. *See* 20 C.F.R. §§ 416.1455, 416.1481. Diaz now seeks judicial review of the Commissioner's decision, but has not filed a reply brief in support of her appeal.

Originally, Diaz asserted she was disabled because of bipolar disorder and depression, in addition to a series of physical ailments stemming from her obesity, diabetes, and asthma. (*See* Tr. at 169). However, at her September 8, 2010, hearing, her attorney explained that her asthma was "well controlled" and that she had lost approximately 100 pounds; hence, he represented that she was proceeding on a "purely psychiatric case." (Tr. at 135). The record contains medical evidence from several physicians, including Diaz's main treating source physician, Dr. Eis, a consulting psychiatrist, Dr. Manos, the opinions of two other treating source physicians, Drs. Zeba Sami and Michael Raster,[1] and the opinion of a state agency reviewing psychologist, Dr. Roger Rattan. (Tr. at 670, 702; 707-717; 890-95; 872-75; 594-600). Diaz also testified as to her condition. (Tr. at 125-61).

STANDARD OF REVIEW

The court will affirm the decision of the commissioner if the ALJ applied the correct legal standards and supported his decision with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is "evidence a reasonable person would accept as adequate to support the decision." *Prochaska v. Barnhart*, 454 F.3d 731, 734–35 (7th Cir. 2006). In evaluating the evidence, the court may

---

[1]Diaz asserts that the opinions of Drs. Sami and Raster are treating source opinions. (Doc. 11, Attach. at 25). However, the record shows Diaz saw Dr. Sami twice and Dr. Raster once. (Tr. at 890-95; Tr. at 872-75). This court does not need to decide whether Drs. Sami and Raster are treating source opinions in order to reach its conclusion.

"not displace the ALJ's judgment by reconsidering facts or evidence or making credibility determinations." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). The ALJ's decision must provide "an accurate and logical bridge" between the evidence and the conclusion. *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012). The ALJ "need not mention every snippet of evidence in the record." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). However, the ALJ must "connect the evidence to the conclusion" and "may not ignore entire lines of contrary evidence." *Id*.

## ANALYSIS

On appeal, Diaz raises six issues: (1) the ALJ did not explain the reason for omitting the opinions of non-examining state agency doctors, which are inconsistent with the ALJ's decision and not found in the ALJ's finding of residual functional capacity; (2) the ALJ "did not follow [the] standards or explain the weight he gave to" a consulting psychiatrist's opinion; (3) the ALJ did not properly evaluate the opinions of treating physicians; (4) the ALJ inadequately explained his finding on the claimant's credibility; (5) the ALJ improperly concluded that treatment for bipolar disorder was effective; and (6) the ALJ did not properly consider the "combined effects of all the claimed impairments."

First, Diaz argues that the ALJ did not adequately assess the opinions of any of the medical personnel that assessed her condition. Specifically, she cites to the opinions of "non-examining state agency doctors," a "consultive psychological evaluation," and "treating source opinions." However, this court finds that the ALJ gave adequate consideration to all of the medical opinions in the record.

With respect to the opinions of the non-examining state agency doctors, Drs. Zhen Lu and Rattan, Diaz's attorney told the ALJ that the reports were out of date and could not be relied upon as more recent medical opinion would indicate that Diaz is unable to perform competitive employment. (Tr. 479.). Generally, under SSR 96–6p, state agency consulting

3

opinions "must be treated as expert opinion evidence of non-examining sources" and the ALJ may not ignore these opinions, explaining the weight given to them in his decision. *See Kadletz v. Astrue*, No. 09–C–1101, 2010 WL 2926198, *17 (E.D. Wis. July 26, 2010). However, an ALJ could rely on an attorney's assertion that the reports "could not be relied upon" because a "claimant represented by counsel is presumed to have made his best case before the ALJ." *Skinner*, 478 F.3d at 842.

Moreover, these state agency opinions stated Diaz had no restrictions on activities of daily living, no episodes of decompensation of extended duration, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. (Tr. at 594). In contrast, the ALJ here found Diaz had moderate limitations in daily activity, social functions, and maintenance of concentration, persistence, or pace. (Tr. at 23). Therefore, it appears from the record that Diaz benefitted from her attorney's concession.[2]

Diaz's argument is largely based on a series of boxes checked by Dr. Rattan on a Mental Residual Functional Capacity Form. (Doc. 11, Attach. 1 at 19; and *see* Tr. at 598-600). However, the boxes checked were in Section I of the form and do not represent a finding of RFC. Section I is merely a worksheet to aid in deciding the presence and degree of functional limitations along with the adequacy of documentation and does not constitute the RFC assessment. *See* Social Security Administration Program Operations Manual System (POMS), *available at* https://secure.ssa.gov/apps10/poms.nsf/lnx/0424510060 (last

---

[2]Diaz's attorney actively sought to have the opinions removed from consideration (Tr. at 479). Additionally, Diaz argues that the ALJ did not address Dr. Lu's opinion indicating that Diaz's obesity limited her to "avoid even moderate exposure to fumes, odors, dusts, gasses, poor ventilation, etc," but merely quotes the opinion without explaining how the ALJ erred in his consideration or what implication the opinion had on Diaz's work capabilities. (Tr. at 580; *see* Doc. 11, Attach. 1 at 18-20). The ALJ did address the substance of the opinion to some extent noting that much of the record was three-to-seven years old, and did not reflect "significant changes in claimant's overall condition - such as positive effects of her admitted substantial weight loss." (Tr. at 22). Consequently, this court will further analyze Diaz's combined physical and mental impairments later in the decision.

visited November 10, 2014).  It is for "Section III - Functional Capacity Assessment" to record the "mental RFC determination" and to "explain[] the conclusions indicated in Section I." *Id.*  The physician is instructed to check the box "moderate" whenever he finds the patient is "impaired."  *Id*.  There is no intermediate step between "not significantly limited" and "moderately limited."[3]  *Id.*

It should be noted that Dr. Rattan did not write an opinion in Section III.  (Tr. at 600). Rather, in Section III, Dr. Rattan wrote "see ews" to indicate that the findings would be listed on another form. (*Id.*).  The other form does not appear in the record; however, Diaz has not raised that as an issue.  Ultimately, Dr. Rattan's opinion was not a complete evaluation, and Diaz's attorney instructed the ALJ to not consider the dated opinions. Therefore, this court concludes that it was acceptable for the ALJ to not consider the non-treating state agency opinions of Dr. Rattan and Dr. Lu.

Diaz next asserts that the ALJ did not "follow any standards or explain the weight he gave" to the consulting psychiatric opinion of Dr. Manos.  (Doc. 11, Attach. 1 at 21). However, the express language of the ALJ's opinion belies this assertion.  (Tr. at 23).  The ALJ stated, "Dr. Manos couches that intolerance in terms of the claimants difficulty in responding to coworkers and superiors - and that <u>only</u> because she 'does not like to be told what to do.'  Dr. Manos specifically added that the claimant would be capable of simple tasks, but that she lacks <u>motivation</u> due to her bipolar disorder." (Tr. at 23 (citing Tr. at 707-17)).

The ALJ's summary quotes Dr. Manos's analysis almost verbatim and in no way diverges from the doctor's opinion. (*See* Tr. at 711).  The sum of the ALJ's conclusion -

---

[3]The Third Circuit has noted that the moderate label is far from determinative. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 637 (3d Cir. 2010).  "The definition does not require that the individual's capacity be at a level that is unacceptable in a national workforce; rather, the instructions specify that "[t]he degree and extent of the capacity or limitation must be described in narrative format in Section III."  *Id.*

that Diaz's bipolar disorder caused a lack of motivation, increased stress and difficulties with coworkers and supervisors - directly flows from the opinion. (*Compare* Tr. at 22-23 *with* Tr. at 711). In effect, the ALJ adopted Dr. Manos's opinion as his own.

Diaz goes on to argue that the ALJ's interpretation of Dr. Manos's opinion is wrong for several reasons. (Doc. 11, Attach. 1 at 20-23). First, lack of motivation is a symptom of bipolar disorder. (Doc. 11, Attach. 1 at 21). Second, the ALJ "guessed" that Diaz's condition should improve with treatment. (Doc. 11, Attach. 1 at 23).

Again Diaz's arguments prove unavailing. The ALJ agreed that Diaz's lack of motivation was a result of her bipolar disorder. Further, Dr. Manos's opinion does suggest that her bipolar disorder will improve with treatment. (Tr. at 711). Dr. Manos noted that Diaz's bipolar disorder was in remission in 2009 at the time of the last progress note, and that since that time she had stopped treatment. (Tr. at 711). Moreover, Dr. Manos further observed that the return of Diaz's bipolar symptoms corresponded with her cessation of treatment. (Tr. at 711). In addition, there is more evidence for that conclusion in the record, including Diaz's testimony. (*See*, *e.g.*, Tr. at 143-48 (Diaz explaining the difference of being on versus being off of her bipolar medication). Therefore, the ALJ did not err in the weight he gave to Dr. Manos's opinion.

Interestingly, Diaz also argues that the ALJ did not give sufficient weight to the opinions of her treating source physicians, Dr. Eis, Dr. Raster, and Dr. Sami. (*See* Doc. 11, Attach. 1 at 23-25). The Seventh Circuit has addressed the weight an ALJ must give to treating source opinions. *See Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). A treating source opinion must receive controlling weight if it is "'[w]ell supported' and 'not inconsistent with the other substantial evidence' in the record." *Id.* (citing 20 C.F.R. § 404.1527(d)(2)). An ALJ must offer good reasons for discounting a treating source opinion. *Campbell v.*

*Astrue*, 627 F.3d 299, 306 (7th Cir. 2010). An ALJ may not choose to discuss parts of a an opinion that support a finding of non-disability and ignore other parts that lead to the opposite inference. *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009).

Diaz first contends that the ALJ discounted Dr. Eis's opinion without sufficient reasoning. However, upon closer examination of the record, that assertion rings false. Dr. Eis gave two treating source opinions related to her condition (*See* Tr. at 670, 703). In both reports, Dr. Eis concluded that Diaz would be unable to "manage a competitive employment situation." (Tr. at 670, and *see* Tr. at 703). In particular, Dr. Eis cited to her inability to handle workplace stress (Tr. at 670), and stated that treatment of her conditions may lead to moderate improvement. (Tr. at 670). However, the improvement would not be enough to significantly change Diaz's ability to manage work. (*See id.*).

The ALJ assessed the opinion of Dr. Eis, and assigned it appropriate weight in the context of the other evidence. In his opinion, the ALJ explicitly noted that Dr. Eis's opinion "suggest[ed] that the claimant would be intolerant of the routine stress of competitive full-time employment. (Tr. at 23). This is an accurate summary of Dr. Eis's two opinions.

The ALJ indicated that the reason he discounted Dr. Eis's conclusion -- that treatment would only be minimally effective -- was the more thorough report of Dr. Manos (the consulting psychiatrist). The ALJ reasoned that Diaz's impairments stemmed from the bipolar disorder and when she stopped taking medication for the disorder her condition dramatically worsened. (Tr. at 22-23). The ALJ relied on the opinions of all relevant doctors as well as Diaz's own testimony and concluded that if Diaz resumed treatment her impairments would dramatically decrease. This conclusion was consistent with the opinions of Dr. Manos, Dr. Raster, and Diaz's testimony. (*See* Tr. at 711, 872-75, 143-48). In the ALJ's words:

7

> [A] close reading of [Dr. Manos's and Dr. Eis's] reports, together with the balance of the latest evidence, indicates that, if the claimant's bipolar disorder can remain stable as properly treated . . . If [plaintiff] is then not required to have much interaction with others in the workplace, she should otherwise be able to perform the mental aspects of basic work activities."

(Tr. at 23).

This conclusion does not contradict anything Dr. Eis said in his opinion. Dr. Eis indicated that treatment led to a "modest level of improvement" in Diaz's conditions. (Tr. at 670). The doctor simply judged that this level of improvement would still not give her the ability to handle a competitive workplace environment. (*Id.*). "[W]orkplace stress" was key to Dr. Eis's determination. (*Id.*). Based upon Dr. Manos's opinion, the ALJ concluded that Diaz's workplace stress was the result of interaction with coworkers and supervisors. (Tr. at 23). Therefore, as long as Diaz was in an environment without "much interaction with others" and maintained treatment, she would be able to handle basic work activities. (*Id.*).

To limit Diaz's workplace stress, the ALJ placed limitations on the work he found her capable of performing. (Tr. at 24). The ALJ limited her potential work to that unskilled in nature (involving no more than two to three step tasks), with only simple work related decisions, with no fast work pace or strict production demands, while allowing Diaz to be off task up to ten percent of the work day in addition to normal breaks. (Tr. at 24). Most importantly, the ALJ limited workplace interactions so that there would be "no tandem tasking or more than very little interaction with coworkers and/ or supervisors (supervisors typically no more than once per day)." The ALJ concluded that these restrictions combined with treatment would allow Diaz to function as an employee. (*Id.*) This finding is consistent with Dr. Eis's opinion and the substantial evidence in the record.

Diaz further submits, in a single paragraph, that the ALJ improperly considered the opinions of Drs. Sami and Raster. However, she offers nothing other than a one-sentence argument that the ALJ failed to give proper weight to Dr. Raster's opinion. The remainder

8

of the paragraph asserts that Dr. Sami's opinion was inconsistent with the ALJ's conclusion that her treatment compliance lead to stability. Both arguments fail.

The ALJ gave adequate weight to the opinions of Drs. Sami and Raster. The ALJ cited to and considered Dr. Raster's opinion. (Tr. at 22). Also, the ALJ touched on the opinion to support the proposition that Diaz's bipolar symptoms would improve with treatment. This too is entirely consistent with Dr. Raster's opinion. (*See* Tr. at 871-78).

Additionally, Diaz misstates the conclusion the ALJ reached from Dr. Sami's opinion. Diaz asserts that the ALJ concluded that her treatment would be effective based upon Dr. Sami's opinion. However, the ALJ did not base that conclusion upon what Dr. Sami said, but upon what "the claimant subsequently indicated in her testimony." (Tr. at 22). The ALJ simply stated that Dr. Sami noted Diaz "presented with a 'low' mood, but that her indicated symptoms were otherwise mild." (Tr. at 22). The ALJ considered Dr. Sami's opinion, but did not appear to reach any large conclusions based solely upon it. (*See Id.*) Therefore, the ALJ's consideration of Dr. Sami's and Dr. Raster's opinions was proper.

The court is mindful that throughout her brief, Diaz maintains that the ALJ "guessed" that her condition should improve with treatment, a conclusion based upon "speculation" and not "substantial evidence." (*Id.* at 23). However, the ALJ's analysis on this point is supported by citations and references to the record. (*See* Tr. at 22-24). In other words, the ALJ's determination was based in substantial evidence rather than guesswork or an attempt to "play doctor."

The ALJ analyzed the medical records and reasonably concluded that treatment was effective. (*See* Tr. at 22-24). He summarized the medical record in concluding that Diaz has had "positive responses to medication." (Tr. at 22). Although Diaz contends that the ALJ failed to point to a medical opinion in reaching his conclusion, he cited to all of the relevant doctor's opinions and the Diaz's testimony. (Tr. at 22-23). The ALJ's opinion is

9

not inconsistent with the doctors' opinions. (*See* Tr. at 594-600, 670, 702, 707-717, 872-75, 890-95). Moreover, in his analysis, the ALJ highlighted and compared periods of compliance and non-compliance with prescribed treatment. From the record the ALJ determined that Diaz's capabilities were much greater under treatment than without. (Tr. at 22-23). In sum, the ALJ reasonably relied on the evidence in the record to conclude that Diaz's treatment for bi-polar disorder was effective.

Diaz goes on to argue that even if her treatment were effective, the ALJ did not properly analyze why there was a deficiency in treatment. Specifically, she cites to a case from this court for the proposition that an ALJ "may not rely on lack of treatment without exploring why treatment was infrequent." (Doc. 11, Attach. 1 at 26) (citing *Wieland v. Astrue*, No. 11–C–0452, 2012 WL 4344590 (E.D. Wis. Sept. 21, 2012)). However, the ALJ was aware that non-compliance was for both legitimate and unreasonable reasons, such as a refusal to participate in therapy and personal dislike of medication, as well as child care problems and a difficult pregnancy. Therefore, her argument regarding the ALJ's treatment analysis fails.

With respect to her argument that the ALJ did not adequately address her combined impairments (Doc. 11, Att. 1 at 27-29), Diaz maintains that the ALJ did not consider her obesity, diabetes, asthma, and infections. (Doc. 11, Attach. 1 at 27-29). She asserts that she "has diabetes with bad feet with frequent and recurrent infections," has "recurrent infections in her nose, her eye, her neck and her foot," she "gets urinary tract infections and repeated upper respiratory infections," and that she "gets thrush from her inhaler." (Doc. 11, Attach. 1 at 27). From this, Diaz claims that she is unable to work -- rising to the level of a disability. (*Id*).

However, as Diaz admits in her brief, her "attorney did not argue the case on that basis." In fact, her attorney conceded that "this is purely a psychiatric case." The ALJ is

entitled to rely on the arguments made before him and base his decision upon them. *See Skinner*, 478 F.3d at 842. "A claimant represented by counsel is presumed to have made his best case before the ALJ." *Id.*

Moreover, it is evident from the decision that the ALJ did consider Diaz's physical conditions. (Tr. at 22-24). The ALJ noted that Diaz had lost 100 pounds recently, and that her diabetes and asthma were under control. (Tr. at 21). Diaz does not cite anything in the record to support her argument on this point. (*See* Doc. 11, Attach. 1 at 27-28). Most important, Diaz cites no medical evidence (nor can this court find any beyond Dr. Lu's "check the box" analysis) implying that her physical impairments cause work-related restrictions. (Doc. 11, Attach. 1 at 27-28). Diaz does not even argue that her physical impairments cause greater limitations than those outlined in the RFC. (*See* Doc. 11, Attach. 1). It is her responsibility to show that the impairments would have further restricted the RFC. *See Pepper v. Colvin*, 712 F.3d 351, 362-65 (7th Cir. 2013) (citing *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008)). Again, the ALJ reasonably based his conclusions in the record, and Diaz has failed to show otherwise.

As a final matter, Diaz contends that the ALJ failed to adequately address why he found her testimony lacked credibility. (Doc. 11, Attach. 1 at 25-27).[4] That argument is predicated on the use of "boilerplate" language in the ALJ's assessment. (Doc. 11, Attach. 1 at 25-27). Specifically the ALJ said:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some symptoms of the types alleged. However, the claimant's statements concerning the intensity, persistence and limiting effects of those

---

[4] The entire argument on this point is contained within approximately two paragraphs under the heading "The assessment of symptoms and their effects and credibility." (Doc. 11, Attach. 1 at 26-27). The remainder of the section was spent arguing with the ALJ's conclusions with respect to treatment and motivation. (Doc. 11, Attach. 1 at 25-27). Diaz failed to file a reply brief to elaborate on this point or any others.

11

> symptoms cannot be considered entirely credible, for the reasons explained in this decision. The record shows that the claimant should be functional if properly treated and motivated.

(Tr. at 24).

An ALJ's credibility determination may be overturned only if it is "patently wrong." *Pepper*, 712 F.3d at 362-67. However, an ALJ must discuss specific reasons in the record to support the finding. *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009). A failure to do so could also be grounds for reversal. *See Bjornson v. Astrue*, 671 F.3d 640, 649 (7th Cir. 2012). The use of the boilerplate language that testimony cannot be considered "entirely credible" gives the court little indication of the weight the ALJ gave the testimony. *Parker v. Astrue*, 597 F.3d 920, 921-22 (7th Cir. 2010) (emphasis omitted).

However, even though boilerplate is unhelpful, the fact that the ALJ "used boilerplate language does not automatically undermine or discredit the ALJ's ultimate conclusion if [she] otherwise points to information that justifies [her] credibility determination." *Pepper*, 712 F.3d at 367–68. "[T]he ALJ's use of boilerplate language is reversible error if [he] did not give sufficient reasons, grounded in evidence in the record, to support her ultimate determination." *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014).

Here, it becomes clear from the opinion that the ALJ's credibility determination was grounded in substantial evidence. First, the ALJ effectively adopted much of Diaz's testimony as true. (*See* Tr. at 21-24). The ALJ agreed with Diaz that she had significant mental impairments. (Tr. at 22). He also agreed that her workplace social interactions were a major source of stress. (Tr. at 22-23). Indeed, the ALJ made his RFC determination largely based on the issue of Diaz's stress. (Tr. at 22-24). This was the main focus of the ALJ's opinion.

It appears the place where the ALJ disagreed with Diaz's testimony concerned the extent to which her impairments effected her ability to work. However, nothing in the law requires the ALJ to "accept wholly the claimant's perception of a disability." *Cass v. Shalala*, 8 F.3d 552, 555 (7th Cir. 1993). The ALJ discussed Diaz's prior positive responses to treatment when it was provided as prescribed and maintained for Diaz's long-term bipolar disorder, he discussed her GAF scores, considered recent treatment, and allowed for very little interaction with coworkers and/or supervisors. Consequently, the court finds that, while the ALJ used the boilerplate language, such language does not undermine his conclusion that, notwithstanding Diaz's bipolar disorder, there are jobs that exist in significant numbers in the national economy that she could perform. Accordingly,

IT IS ORDERED that the Commissioner's decision is affirmed.

IT IS FURTHER ORDERED that this case is dismissed.

Dated at Milwaukee, Wisconsin, this 29th day of January, 2015.

BY THE COURT

/s/ C.N. Clevert, Jr.
C.N. CLEVERT, JR.
U.S. DISTRICT JUDGE